

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street, 3ʳᵈ Floor*
*New York, NY 10007*

June 21, 2016

<u>By ECF</u>
Honorable Katherine Polk Failla
United States District Judge
Daniel Patrick Moynihan United States Courthouse
40 Foley Square, Room 2103
New York, New York 10007

Re:   <u>United States v. Nederlander Org.</u>, 14 Civ. 0340 (KPF)

Dear Judge Failla:

This Office represents the United States in the above-referenced case. On January 28, 2014, the Court approved a Consent Decree in this case, under which the Nederlander Organization ("Nederlander") agreed to make certain changes to nine Broadway theaters consistent with Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-12189, and the Department of Justice implementing regulation, 28 C.F.R. Part 36. A copy of the Consent Decree is annexed hereto as Exhibit A.  By Order dated December 4, 2015, the Court extended the time of Nederlander to fully comply with the Consent Decree to June 30, 2016.  (Exhibit B.)

Pursuant to paragraph 24 of the Consent Decree, Nederlander has represented that as of June 20, 2016, it has fully complied with the Consent Decree with respect to eight of the nine theaters. (Consent Decree ¶ 24(a), (b).)  The sole remaining theater is the Palace Theater. As has been widely reported, however, the Palace Theater will be undergoing an extensive renovation in 2017. (A news article discussing the renovation is attached as Exhibit C.)

Accordingly, the parties jointly request that the Court extend the deadline of Nederlander to fully comply with the Consent Decree for six more months, to December 31, 2016. This is the parties' second request for an extension.  The parties anticipate using the proposed extension of time to address any issues of accessibility at the renovated Palace Theater.

Accordingly, the parties jointly and respectfully request that the deadlines in paragraph 24(c) of the Consent Decree be extended by six months, to extend the completion date at all nine

Letter to the Hon. Katherine Polk Failla
June 21, 2016
Page 2 of 2

theaters to no later than December 31, 2016, and submit the required certifications of completion no later than January 31, 2017.

        We thank the Court for its attention to this matter.

                          Respectfully,

                          PREET BHARARA
                          United States Attorney

By:    __/s/ David J. Kennedy_____
                          DAVID J. KENNEDY
                          Assistant U.S. Attorney
                          Tel.: (212) 637-2733
                          Fax: (212) 637-0033
                          E-mail: david.kennedy2@usdoj.gov

Cc:    David Malkin, Esq.
        Counsel to Nederlander Organization
        By Email

        Courtesy copy to Chambers Email: Failla_NYSDChambers@nysd.uscourts.gov

# EXHIBIT A

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   01/28/2014

PREET BHARARA
United States Attorney
Southern District of New York
By:    DAVID J. KENNEDY
       REBECCA C. MARTIN
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel. No.:  (212) 637-2733 (Kennedy)
           (212) 637-2714 (Martin)
david.kennedy2@usdoj.gov
rebecca.martin@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,                    :

                Plaintiff,              :

                v.                           :

NEDERLANDER ORGANIZATION, INC.,              :

                Defendant.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**CONSENT DECREE**

14 Civ. _0340_ (_KPF_)

WHEREAS, the United States of America (the "Government") commenced this action to enforce provisions of Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181 *et seq.*, and the Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Pt. 36 (the "Regulations"), and the ADA Standards for Accessible Design, consisting of 28 C.F.R. Pt. 36, App. D (the "1991 Standards"); and Appendices B and D to 36 C.F.R. Pt. 1191 (2009), and the requirements contained in subpart D of 28 C.F.R. Pt. 36 (the "2010 Standards"), against Nederlander Organization, Inc. ("Nederlander") with respect to the following theaters:

(a) the Brooks Atkinson Theater, built in 1926, and located at 256 West 47th Street;

1

(b) the Gershwin Theater, opened in 1972, and located at 222 West 51st Street;

(c) the Lunt-Fontanne Theater, built in 1910, remodeled in 1958, and located at 205 West 46th Street;

(d) the Marquis Theater, opened in 1986, and located at 211 West 45th Street;

(e) the Minskoff Theater, opened in 1973, and located at 1515 Broadway;

(f) the Nederlander Theater, built in 1921, and located at 208 West 41st Street;

(g) the Neil Simon Theater, built in 1927, and located at 250 West 52nd Street;

(h) the Palace Theater, opened in 1913, and located at 1564 Broadway; and

(i) the Richard Rodgers Theater, opened in 1924, and located at 226 West 46th Street;

all in New York, New York (collectively, the "Theaters," and each individual theater being the "Theater");

WHEREAS, the Complaint in this action, filed on January 17, 2014 (the "Complaint"), alleges that Nederlander violated Title III of the ADA (a) by failing to remove architectural barriers to access at the Theaters where such barrier removal is readily achievable, or, where such barrier removal is not readily achievable, by failing to make goods and services at the Theaters available through readily achievable alternatives to barrier removal, see 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. § 36.304(a); (b) by failing to make reasonable modifications to policies, practices, or procedures at the Theaters, including providing individuals with disabilities equal access to tickets, see 42 U.S.C. § 12182(b)(2)(A)(v); and (c) by failing to have a reasonable number of wheelchair seating locations, companion seating locations, and designated aisle transfer seats that are dispersed throughout the seating areas, that are readily accessible to, and usable by, individuals with disabilities, and that provide lines of sight comparable to persons without disabilities, see 28 C.F.R. §§ 36.308;

2

WHEREAS, the Complaint alleges that the Theaters are places of public accommodation within the meaning of 42 U.S.C. § 12181(7) because their operations affect commerce, and the Theaters are facilities that include a theater, bars that serve food or drink, and merchandise concession facilities, see 42 U.S.C. §§ 12181(7)(B), (C), (E), 12182; 28 C.F.R. § 36.104;

WHEREAS, as a result of negotiations between the Government and Nederlander following the initiation of the Government's investigation and prior to the entry of this Consent Decree, Nederlander has voluntarily made various architectural improvements to accessibility at the Theaters pursuant to the 1991 Standards, and the architectural improvements required herein shall therefore also be made pursuant to the 1991 Standards, except that the wheelchair and companion seating locations have been selected pursuant to the 2010 Standards;

WHEREAS, Nederlander enters into the Consent Decree without any admission of liability;

WHEREAS, Nederlander has cooperated fully with the Government's investigation and shall continue to work cooperatively with the Government to improve accessibility at the Theaters, and the parties agree that much of the relief set forth in this Consent Decree has already been accomplished by Nederlander in the course of the Government's investigation, and specifically that Nederlander has removed certain architectural barriers to access, made certain goods and services available to patrons with disabilities, established policies and procedures providing individuals with disabilities equal access to tickets, installed power automatic doors, retrofitted box offices, purchased and installed appropriate signage, created wheelchair seating locations, companion seats and aisle transfer seats whenever readily achievable, constructed accessible retail and bar counters, and provided accessible paths of travel and modified telephones, drinking fountains and restrooms in compliance with the agreed upon Exhibits; and

3

WHEREAS, Nederlander has consented to the entry of this Consent Decree without trial or adjudication of any issues of fact or law; and

WHEREAS, the Government and Nederlander agree that settlement of these matters without further litigation is in the public interest and that the entry of this Consent Decree is the most appropriate means of resolving these matters;

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED** as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 42 U.S.C. § 12188(b)(1)(B) and 42 U.S.C. §§ 1331 and 1345.

## II. APPLICATION AND PARTIES BOUND

2.      This Consent Decree applies to, and is binding upon, the Government and Nederlander. This agreement shall be binding on Nederlander, its agents and employees, and successors or assigns. The undersigned representatives of Nederlander certify that they are authorized by Nederlander to enter into and consent to the terms and conditions of the Consent Decree and to execute and legally bind Nederlander to it.

3.      The Theaters are places of public accommodation within the meaning of 42 U.S.C. § 12181(7) because each one is a "theater, . . . or other place of exhibition or entertainment" within the meaning of 42 U.S.C. § 12181(7)(C) and 28 C.F.R. § 36.104. Nederlander operates a place of public accommodation as defined in 42 U.S.C. § 12181 and 28 C.F.R. § 36.104, and is thus a public accommodation.

4

4.      This Consent Decree shall apply solely to the theater facilities at the Theaters. Notwithstanding any term of this Consent Decree, specifically reserved and excluded from the scope and terms of this Consent Decree as to any entity or person, including the Government, is any claim arising under the ADA and the Department of Justice regulations implementing the ADA, pertaining to (a) the areas below stage; (b) the below or above-stage dressing and wardrobe room areas; and (c) the security and other office areas, including but not limited to any claims pertaining to the toilet facilities in these areas, or the routes to and connecting these areas, at each of the Theaters.

## III.   INJUNCTIVE RELIEF

## A.      ARCHITECTURAL MODIFICATIONS AND ACCOMMODATIONS

5.      <u>Entrances</u>:  Nederlander shall maintain automatic accessible entry doors on an accessible entrance route at the main entrance that meets the requirements of Standards § 4.13 in each Theater.   Nederlander shall maintain the doors in good working order, ensure that they are in operation every day a performance is scheduled, and repair any doors that are not in good working order within 3 days.   Nederlander shall maintain signage in each Theater indicating the location of the automatic doors that meets the requirements of Standards § 4.1.6(1)(h).   Nederlander shall maintain the thresholds at the automatic doors to meet the requirements of Standards § 4.13.8. Nederlander shall maintain the door closers to meet the requirements of Standards § 4.13.10. Nederlander shall maintain signage that meets the requirements of Standards § 4.1.2(7)(c) at the exterior of all inaccessible designated public entrances indicating the location of accessible entrances.   In addition, Nederlander shall maintain and/or alter the entrances to each specific Theater as set forth in Exhibits 1A through 9A.

5

6.    Restrooms:  Nederlander shall (1) maintain and/or alter the unisex accessible restrooms and other restrooms in each specific theater, as set forth on Exhibits 1A through 9A, and 1B through 9B; (2) provide restroom accessibility information on its internet site for its theater patrons; and (3) maintain a wheelchair accessible unisex toilet room that meets the requirements of Standards §§ 4.16, 4.17, 4.19, 4.22 and 4.30 in each Theater to the extent set forth in Exhibits 1A through 9A, and 1B through 9B.

7.    Drinking Fountains:  Nederlander shall maintain at least one accessible drinking fountain or water cooler on the orchestra level of each Theater, where a water fountain is provided, that is compliant with the requirements of Standards §§ 4.15.2, 4.15.3, and 4.15.4, and shall supply cups with flat bottoms.

8.    Food and Beverage Service:  For any food and beverage concessions that are available in each of the Theaters to the general public, Nederlander shall either (a) provide waiter service for wheelchair users at their designated accessible seating locations during intermissions (at least ten minutes before the performance, a waiter shall ask wheelchair users at their designated accessible seating locations if any food or beverage is desired); or (b) provide concession facilities that meet the requirements of Standards § 7.2(2)(i), (ii), or (iii).   In the event that Nederlander provides waiter service, Nederlander shall issue together with the ticket to wheelchair seating a written notice informing wheelchair users of the availability of waiter service during intermissions.   In addition, in the event that Nederlander provides waiter service, Nederlander shall (a) provide notice on its Internet site informing wheelchair users of the availability of waiter service during intermissions; and (b) provide in the theater lobby signage that complies with Standards §§ 4.30.2 and 4.30.5 informing wheelchair users of the availability of waiter service during intermissions.

6

9.   <u>Ticket Windows</u>:   Nederlander shall maintain one pass-through or writing counter at a maximum height of 36 inches at one of the ticket windows in each Theater.   Standards § 7.2. In the case of the Brooks Atkinson, Gershwin, Neil Simon, and Palace Theaters, Nederlander shall install one pass-through or writing counter at a maximum height of 36 inches at one of the ticket windows.

10.   <u>Egress Route</u>:   Nederlander shall maintain in each Theater a partially accessible egress route as set forth in Exhibits 1B through 9B.

11.   <u>Protruding Objects</u>:   Nederlander shall remove protruding objects or maintain cane-detectable barriers for protruding objects in compliance with Exhibits 1B through 9B.

12.   <u>Assistive Listening Systems</u>: Nederlander shall provide and maintain Assistive Listening Systems ("ALS") and receivers at each Theater for persons who are hard of hearing, pursuant to 28 C.F.R. § 36.303 and Standards § 4.33.7.

13.   <u>Signage</u>:   Nederlander shall provide and maintain Theater signage as set forth in Exhibits 1B through 9B.

14.   <u>Alarm Systems</u>: To the extent Nederlander installs or modifies its alarm systems, it shall install a visual alarm system in non-seating areas.   <u>See</u> Standards §§ 4.1.3(14) and 4.28.

**B.     WHEELCHAIR AND COMPANION SEATING LOCATIONS**

15.     Nederlander shall provide or install and maintain wheelchair and companion seating locations at the Theaters as set forth in Exhibits 1C through 9C, in which all companion seating has been or will be located shoulder to shoulder with the wheelchair seating locations to the maximum extent feasible.   Wheelchair seating locations that Nederlander is required to provide or install shall not be set on removable platforms, although Nederlander may install and maintain

7

permanent platforms to ensure level wheelchair seating locations.  If Nederlander installs and maintains such a platform, Nederlander shall ensure that the front edge of such platform is raised to prevent a wheelchair from rolling forward.

16.    All wheelchair and companion seating locations that Nederlander is required to provide or install, as set forth in Exhibits 1A through 9A, 1B through 9B, and 1C through 9C, shall adjoin an accessible route and comply with Standards §§ 4.33.2 and 4.5.3 to the extent set forth in Exhibits 1A through 9A, 1B through 9B, and 1C through 9C.  It will be sufficient for Nederlander to provide one accessible or partially accessible means of egress for each seating location that Nederlander is required to provide or install pursuant to Exhibits 1A through 9A, 1B through 9B, and 1C through 9C.

17.    Nederlander shall provide and maintain seats that are equipped with folding armrests ("designated aisle seats") as set forth in Exhibits 1C through 9C.

C.    ALTERATIONS

18.    Nothing in this Consent Decree shall prevent Nederlander from making alterations to any Theater, as defined in 42 U.S.C. § 12183 and 28 C.F.R. § 36.402(b), in addition to those alterations required by the Consent Decree.  Any such additional alterations not contemplated by this Consent Decree shall be made in accordance with the 2010 Standards, and any amendments thereto, and shall be accessible to the "maximum extent feasible," as defined by 28 C.F.R. § 36.402(a).

D.    TICKET POLICIES AND PRICING

19.    Methods of Purchase:   Nederlander shall provide for the availability of tickets for

8

wheelchair and companion seating locations and aisle transfer seating for all performances at the Theaters in the same manner as it makes tickets available to members of the general public through all methods and at all locations controlled by Nederlander and/or Nederlander's agents. Nederlander shall direct each Theater to inform persons who specifically request wheelchair and companion seating on the basis of a disability of all of the available seating that has not been sold at that time, and direct that persons who specifically request wheelchair and companion seating are advised of the location of the seating, routes to the seating, and, where applicable, assistance provided to arrive at the seating. Nederlander shall direct Ticketmaster and its successors to inform persons who specifically request wheelchair and companion seating on the basis of a disability of all of the available seating that has not been sold at that time, provide such persons with their first stated choice of available seating locations, advise of any obstructions of the path of travel to the location, and refrain from encouraging or steering such persons to sit elsewhere.

20.    <u>Purchase of Multiple Tickets</u>:    Nederlander shall permit wheelchair users to purchase three companion seats for each performance (subject to availability) pursuant to 28 C.F.R. § 36.303.    However, the price of only one of the companion seats will be governed by the pricing provisions of paragraph 22 of this Consent Decree.    The additional companion seats, which shall be in proximity to the purchased wheelchair seating locations subject to availability, may be priced at the price of the tickets for conventional seats for persons without disabilities in the same row.

21.    <u>Release of Seating Locations</u>:    Designated accessible wheelchair and companion seating locations shall be the last seating to be released to patrons who do not request accessible seating.    Nederlander shall be permitted to release the unsold wheelchair and companion seating locations for sale to the general public, including patrons who do not request accessible seating

locations, four days (96 hours) after all publicly available non-accessible seating (excluding unsold single seats) is sold out for a particular performance.   In the event that all publicly available non-accessible seating locations (excluding unsold single seats) are sold out within four days (96 hours) of a scheduled performance, Nederlander shall be permitted to release the unsold wheelchair and companion seating locations for sale to the general public, including patrons who do not request accessible seating locations.

    22.    <u>Ticket Pricing</u>:   The ticket pricing for wheelchair and companion seating locations in each Theater shall be as follows:

    a.    For any performance at the Brooks Atkinson Theater: (A) three (3) wheelchair and three (3) companion seating locations shall be offered for sale to wheelchair users and their companions at the lowest ticket price at which tickets are offered for sale for conventional seats for the general public at the Theater; (B) two (2) wheelchair and two (2) companion seating locations shall be offered for sale to wheelchair users and their companions at the price at which adjacent seating locations in the same row are offered for sale for that performance; and (C) eleven (11) aisle transfer seating locations shall be offered for sale to people with disabilities at the price at which adjacent seating locations in the same row are offered for sale for that performance.

    b.    For any performance at the Gershwin Theater: (A) four (4) wheelchair and four (4) companion seating locations shall be offered for sale to wheelchair users and their companions at the lowest ticket price at which tickets are offered for sale for conventional seats for the general public at the Theater; (B) four (4) wheelchair and four (4) companion seating locations shall be offered for sale to wheelchair users

10

and their companions at the price at which adjacent seating locations in the same row are offered for sale for that performance; and (C) eighteen (18) aisle transfer seating locations shall be offered for sale to people with disabilities at the price at which adjacent seating locations in the same row are offered for sale for that performance.

c.     For any performance at the Lunt-Fontanne Theater: (A) three (3) wheelchair and three (3) companion seating locations shall be offered for sale to wheelchair users and their companions at the lowest ticket price at which tickets are offered for sale for conventional seats for the general public at the Theater; (B) two (2) wheelchair and two (2) companion seating locations shall be offered for sale to wheelchair users and their companions at the price at which adjacent seating locations in the same row are offered for sale for that performance; and (C) fifteen (15) aisle transfer seating locations shall be offered for sale to people with disabilities at the price at which adjacent seating locations in the same row are offered for sale for that performance.

d.     For any performance at the Marquis Theater: (A) five (5) wheelchair and five (5) companion seating locations shall be offered for sale to wheelchair users and their companions at the lowest ticket price at which tickets are offered for sale for conventional seats for the general public at the Theater; (B) five (5) wheelchair and five (5) companion seating locations shall be offered for sale to wheelchair users and their companions at the price at which adjacent seating locations in the same row are offered for sale for that performance; and (C) sixteen (16) aisle transfer seating locations shall be offered for sale to people with disabilities at the price at

11

which adjacent seating locations in the same row are offered for sale for that performance.

e.  For any performance at the Minskoff Theater: (A) eight (8) wheelchair and eight (8) companion seating locations shall be offered for sale to wheelchair users and their companions at the lowest ticket price at which tickets are offered for sale for conventional seats for the general public at the Theater; (B) six (6) wheelchair and six (6) companion seating locations shall be offered for sale to wheelchair users and their companions at the price at which adjacent seating locations in the same row are offered for sale for that performance; and (C) seventeen (17) aisle transfer seating locations shall be offered for sale to people with disabilities at the price at which adjacent seating locations in the same row are offered for sale for that performance.

f.  For any performance at the Nederlander Theater: (A) three (3) wheelchair and three (3) companion seating locations shall be offered for sale to wheelchair users and their companions at the lowest ticket price at which tickets are offered for sale for conventional seats for the general public at the Theater; (B) three (3) wheelchair and three (3) companion seating locations shall be offered for sale to wheelchair users and their companions at the price at which adjacent seating locations in the same row are offered for sale for that performance; and (C) twelve (12) aisle transfer seating locations shall be offered for sale to people with disabilities at the price at which adjacent seating locations in the same row are offered for sale for that performance.

g.  For any performance at the Neil Simon Theater: (A) four (4) wheelchair and four

12

(4) companion seating locations shall be offered for sale to wheelchair users and their companions at the lowest ticket price at which tickets are offered for sale for conventional seats for the general public at the Theater; (B) three (3) wheelchair and three (3) companion seating locations shall be offered for sale to wheelchair users and their companions at the price at which adjacent seating locations in the same row are offered for sale for that performance; (C) fourteen (14) aisle transfer seating locations shall be offered for sale to people with disabilities at the price at which adjacent seating locations in the same row are offered for sale for that performance.

h. For any performance at the Palace Theater: (A) nine (9) wheelchair and nine (9) companion seating locations shall be offered for sale to wheelchair users and their companions at the price at which adjacent seating locations in the same row are offered for sale for that performance; and (B) seventeen (17) aisle transfer seating locations shall be offered for sale to people with disabilities at the price at which adjacent seating locations in the same row are offered for sale for that performance.

i. For any performance at the Rodgers Theater: (A) three (3) wheelchair and three (3) companion seating locations shall be offered for sale to wheelchair users and their companions at the lowest ticket price at which tickets are offered for sale for conventional seats for the general public at the Theater; (B) three (3) wheelchair and three (3) companion seating locations shall be offered for sale to wheelchair users and their companions at the price at which adjacent seating locations in the same row are offered for sale for that performance; and (C) fourteen (14) aisle transfer seating locations shall be offered for sale to people with disabilities at the

13

price at which adjacent seating locations in the same row are offered for sale for that performance.

**F.    ADA COORDINATION AND PUBLICITY**

23.    Nederlander shall publicize the availability, pricing, and locations of wheelchair seating, companion seating, and designated aisle seating in any Theater guides, seating charts and other materials published by Nederlander and on Nederlander's Internet site, and direct Ticketmaster or its successors to comply with the requirements of Paragraphs 19 through 22 of this Consent Decree.

**G.    COMPLIANCE**

24.    Nederlander shall implement this Consent Decree as follows:

a.    On or before December 31, 2014, Nederlander shall comply with paragraphs 5 through 23 of this Consent Decree with respect to three of the Theaters, and shall no later than January 31, 2015, submit to the Government a statement under penalty of perjury that it has complied with its obligations under paragraphs 5 through 23 of this Consent Decree with respect to three of the Theaters, setting forth the names of the Theaters.

b.    On or before June 30, 2015, Nederlander shall comply with paragraphs 5 through 23 of this Consent Decree with respect to six of the Theaters, and shall no later than July 31, 2015, submit to the Government a statement under penalty of perjury that it has complied with its obligations under paragraphs 5 through 23 of this Consent Decree with respect to six of the Theaters, setting forth the names of the Theaters.

14

c.  On or before December 31, 2015, Nederlander shall comply with paragraphs 5 through 23 of this Consent Decree with respect to all of the Theaters, and shall no later than January 31, 2016, submit to the Government a statement under penalty of perjury that it has complied with its obligations under paragraphs 5 through 23 of this Consent Decree with respect to all of the Theaters.   In the event that Nederlander is prohibited from implementing this Consent Decree at a particular Theater due to contractual obligations with a show running as of the date of the execution of this Consent Decree, Nederlander shall implement this Consent Decree at that Theater within 90 days of such show completing its run.

d.  Nederlander shall comply with all remaining paragraphs upon the Effective Date of this Consent Decree.

## IV.   RIGHT TO REVIEW COMPLIANCE

25.   Upon reasonable advance notice to Nederlander (through undersigned counsel), Nederlander shall permit the Government and any person acting on its behalf unrestricted access to the Theaters to review compliance with the ADA and this Consent Decree.   If the Government finds that Nederlander has violated this Consent Decree or is otherwise not in full compliance with this Consent Decree, the United States will notify Nederlander in writing and seek to resolve the matter without judicial intervention before applying to the Court for relief. Nederlander shall provide to the Government on January 31, 2015, July 31, 2015, and January 31, 2016, a report on the number of wheelchair, aisle transfer, and companion seating locations sold (through Ticketmaster or its successor), specifying the dates such locations were sold, and the extent to which accessible seats were released to the general public pursuant to this Consent

15

Decree.

## V.   CIVIL PENALTY

26.     Pursuant to 42 U.S.C. § 12188(b)(2)(C)(i), Nederlander shall within thirty (30) days of entry of this Consent Decree pay to the Government a civil penalty in the amount of $45,000.

## VI.   MISCELLANEOUS PROVISIONS

27.     Nothing contained in this Consent Decree is intended or shall be construed as a waiver by the Government of any right to institute any proceeding or action against Nederlander for violations of any statutes, rules or regulations administered by the Government, or to prevent or limit the rights of the Government to obtain relief under the ADA, or any other federal statutes or regulations, or on account of any violation of this Consent Decree or any other provision of law.   However, subject to Nederlander's full compliance with the Consent Decree, the Government will not file a subsequent complaint against Nederlander pursuant to Title III of the ADA concerning the Theaters covered by this Consent Decree for the same violations identified in the Complaint herein, unless Nederlander fails to make alterations in compliance with this Consent Decree.   In the event that Nederlander makes alterations that affect the location of wheelchair seating locations, Nederlander shall provide advance notice to the Government and Nederlander shall make any alterations consistent with Title III of the ADA.

28.     This Consent Decree is a compromise of claims between the Government and Nederlander.   It is based on the unique nature of these particular facilities and its provisions are not necessarily applicable to any other entities or facilities.

16

29.     There shall be no modification of this Consent Decree without the written consent of the Government and Nederlander, and the approval of the Court.

30.     This Consent Decree represents the entire agreement between the Government and Nederlander.   No prior agreements, oral representations or statements shall be considered part of this Consent Decree.

31.     This Court shall retain jurisdiction of this action for a period of three (3) years from the Effective Date, to enforce or modify the provisions of this Consent Decree, to resolve any dispute that arises under this Consent Decree, and to entertain any application and issue any orders (including, without limitation, orders directing the modification of policies, practices, and procedures, and orders requiring the removal of barriers to access) as may be necessary or appropriate for the effectuation of its terms.   The parties shall discuss and attempt to negotiate a resolution of any dispute relating to the interpretation of this Consent Decree before bringing the matter to the Court's attention for resolution.

32.     This Consent Decree may be executed in counterparts, each of which shall be an original and shall constitute one and the same instrument.

33.     Exhibits 1A through 9A, 1B through 9B, and 1C through 9C to this Consent Decree are incorporated by reference into this Consent Decree and the terms set forth in those exhibits are part of this Consent Decree as though fully set forth in the Decree.

34.     The Effective Date of this Consent Decree is the date that it is entered on the docket.

17

## COSTS AND ATTORNEY'S FEES

35.     Each party shall bear its own costs and attorney's fees in this action.


THE PARTIES HEREBY CONSENT to entry of the foregoing Consent Decree:


Dated: New York, New York
      January 17, 2014

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for Plaintiff
United States of America

By: _____
DAVID J. KENNEDY
REBECCA C. MARTIN
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel. No.:    (212) 637-2733 (Kennedy)
           (212) 637-2714 (Martin)
david.kennedy2@usdoj.gov
rebecca.martin@usdoj.gov


Dated: New York, New York
      January 9, 2014

THE NEDERLANDER ORGANIZATION, INC.

By: _____
NICHOLAS G. SCANDALIOS
Executive Vice President
The Nederlander Organization, Inc.
1450 Broadway, 6th Floor
New York, NY 10018
Tel. No.: (212) 840-5577


SO ORDERED:

_____
UNITED STATES DISTRICT JUDGE
HON. KATHERINE POLK FAILLA


Dated: January 28, 2014
      New York, New York

18

# EXHIBIT B

**MEMO ENDORSED**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 4, 2015

*86 Chambers Street, 3rd Floor*
*New York, NY 10007*

December 4, 2015

By ECF
Honorable Katherine Polk Failla
United States District Judge
Daniel Patrick Moynihan United States Courthouse
40 Foley Square, Room 2103
New York, New York 10007

Re:     United States v. Nederlander Org., 14 Civ. 0340 (KPF)

Dear Judge Failla:

This Office represents the United States in the above-referenced case. On January 28, 2014, the Court approved a Consent Decree in this case, under which the Nederlander Organization ("Nederlander") agreed to make certain changes to nine Broadway theaters consistent with Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-12189, and the Department of Justice implementing regulation, 28 C.F.R. Part 36. A copy of the Consent Decree is annexed hereto.

Pursuant to paragraph 24 of the Consent Decree, Nederlander has represented that as of June 30, 2015, it has fully complied with the Consent Decree with respect to six of the nine theaters. (Consent Decree ¶ 24(a), (b).) Nederlander has further advised that it will fully comply with the Consent Decree with respect to seven of the nine theaters by December 31, 2015, as required by the Consent Decree (*id.* ¶ 24(c)), but has requested additional time to comply at two of the theaters, the Minskoff and the Palace Theaters. Nederlander has agreed, however, to implement the Consent Decree in all respects except as to the restrooms at the Minskoff Theater, and has agreed to implement the Consent Decree with respect to the wheelchair, companion, and aisle transfer seating at the Palace Theater, by December 31, 2015.

The United States consents to the Nederlander's request, which is its first request for an extension of time in which to comply.  Accordingly, the parties jointly and respectfully request that the deadlines in paragraph 24(c) of the Consent Decree be extended by six months, to extend the completion date at all nine theaters to no later than June 30, 2016, and submit the required certifications of completion no later than July 31, 2016.

Letter to the Hon. Katherine Polk Failla
December 4, 2015
Page 2 of 2

          We thank the Court for its attention to this matter.

                                    Respectfully,

                                    PREET BHARARA
                                    United States Attorney

                    By:    __/s/ David J. Kennedy_____
                                    DAVID J. KENNEDY
                                    Assistant U.S. Attorney
                                    Tel.: (212) 637-2733
                                    Fax: (212) 637-0033
                                    E-mail: david.kennedy2@usdoj.gov

Cc:    David Malkin, Esq.
        Counsel to Nederlander Organization
        By Email

        Courtesy copy to Chambers Email: Failla_NYSDChambers@nysd.uscourts.gov

Application GRANTED.

Dated:   December 4, 2015            SO ORDERED.
        New York, New York

                                           HON. KATHERINE POLK FAILLA
                                          UNITED STATES DISTRICT JUDGE

# EXHIBIT C

Case 1:14-cv-00340-KPF Document 5 Filed 06/21/16 Page 26 of 50

HOME     1564 BROADWAY

# Palace Theater To Be Lifted 29 Feet For Expanded Facilities And Retail



Morris Adjmi Architects



Palace Theater interior.

**BY: EVAN BINDELGLASS**   8:00 AM ON NOVEMBER 25, 2015

A Broadway landmark is about to reach new heights, literally. The Palace Theater, located at 1564 Broadway, a city-designated interior landmark, will be lifted 29 feet from its current position, accommodating 10,000 square feet of new lobby and back of house space, plus additional retail below the theater.

ADVERTISEMENT

FEATURE STORIES



JUNE 17, 2016

**Tales of the Tenderloin: Theaters, Nightlife, and the World's Longest Painting Once Graced 1205-1227 Broadway, Site of Future**



Plan for the Palace Theater.

The theater is located at the southeast corner of Seventh Avenue and West 47th Street, right in Times Square. It was built between 1912 and 1913 and designed by the firm of Kirchhoff & Rose. The interior was designated an interior landmark in 1987.

Developer Paul Boardman, partner at Maefield Development, began the presentation, saying it would bring a "comprehensive restoration and renovation" of the theater.

Preservation consultant Elise Quasebarth of Higgins Quasebarth & Partners said it was originally built for vaudeville before becoming a movie house and home to other productions and eventually a Broadway theater. When constructed, it was actually surrounded by an office building bearing the "Palace" name. That bulding was removed in 1988.

**Virgin Hotel**



JUNE 10, 2016
**101 Murray Bites the Dust and 111 Murray Street Rises Skyward in Ever-Changing West Tribeca**



MAY 27, 2016
**Watch Time-Lapse of World Trade Center Transportation Hub's Construction**



MAY 27, 2016
**FDNY Investigation Underway at Burnt Shell of Landmark Serbian**



The DoubleTree Hotel.

**Orthodox Cathedral of St. Sava, 15 West 25th Street, Flatiron**



MAY 11, 2016

**Major Streetscape Improvements Proposed for Long Island City**


**@newyorkyimby**
Saying 'Yes In My Backyard' to new development in NYC; covering architecture, construction, and real estate from a pro-growth perspective.






Architect Scott Duenow of PBDW Architects said that the theater, with its 1,700-plus seat capacity, is now encompassed by the 45-story DoubleTree hotel tower. He described it as a separate building, basically a box with an inch-gap.

Currently, theatergoers enter on Seventh Avenue. When the project is completed, they will enter through a new entrance on 47th Street, featuring a 75-foot-wide marquee. Two escalators and one staircase will then take them to the new ground floor mezzanine lobby space

featuring what Duenow described as "a lot of new bathrooms." He said there will be 25 times more lobby space in the new facility. There will also be a new heating, ventilating, and air-conditioning (HVAC) system. He said the theater was laser-scanned to map it.

Tony Mazzo, who supervised the 1998 move of the Empire Theater on West 42nd Street, pointed out that, because the Palace Theater is, indeed, a theater, there are no columns in a large portion of it, meaning it had to be extra strong. He was extremely confident that moving the theater, while complicated, will be fairly straightforward. He said there wouldn't be a problem "as long as the building doesn't know it's moving."

 
 


Load More...

Follow on Instagram


Lift diagram.

"Any structure is built to be moved," he added.

How will it be moved? Put simply, it will be jacked up. Put less simply, some of the current truss would be reinforced and then another part of it would be removed. A protective crate would be constructed around the theater, both above and below ground. Temporary shoring corner towers would also be put in place. Then beams would be inserted for the theater's new platform before jacks using a telescopic hydraulic system are also inserted.

Then the theater will literally be jacked up one inch at a time. "After the first inch, the rest is just repetitive," Mazzo said. After every lift, they will check to make sure

everything is going well. He estimates it will take two weeks to lift the theater.

At that point, Commissioner Frederick Bland, who, as practicing architect, also worked on the move of the Empire Theater, noted that no plaster was damaged in that effort. It took less than a morning to actually move it west on 42nd Street.

As Boardman said, the relocation of the theater will come with a renovation. Duenow said that the theater is actually largely intact, but there is still work to be done. That includes restoring plaster to the balcony, recreating the main chandelier (but making sure it doesn't block sightlines), and installing new opaque main entrance doors with mirrored glass above them.

The non-historic lighting booth will be removed and replaced with two rows of unobstructed seating. New egress paths will be created and the back wall will be moved, meaning the removal of one row of obstructed seating. He said all of this will give the theater the "dignity" that it deserves.

The Palace Theater is part of the Nederlander Organization and Nick Scandalios, Executive Vice President of Nederlander Producing Company of America, called it a "very special jewel." He noted that it was the first theater purchased by the organization and said that he has personally wanted to restore it for a long time.

Commissioner Michael Goldblum asked the question undoubtedly on many people's minds: What if something goes wrong? Mazzo assured him that they are more than ready for the project, noting that the jacks will be have twice the capacity necessary and that the weight will be evenly distributed. That means that if one jack fails, they will still be in good shape.

Commissioner Bland asked what is actually being improved for the theater itself. There will be several improvements, including new dressing rooms and a new pit lift.

Commissioner Michael Devonshire spoke up to ask that the commissioners agree to call for a peer review of the entire project and LPC general counsel Mark Silberman said they could ask for that.

LPC Chair Meenakshi Srinivasan said the theater is "very interesting" and it is "vitally important to protect these interiors," but they must also protect the theater's use as a theater. She said the proposal is both preservation and adaptive reuse, which the commissioners usually love. She said it is a "very bold and daring approach" and a "great project" even though it "pushes the envelope." She found comfort in previous structure moves. She said a new entrance won't diminish the theater. Her only concern: Will it work?

Commissioner Bland echoed the praise of adaptive reuse and said they have to think about the "long-term viability of the theater as an entity."

Commissioner Goldblum spoke of the existing lobby's relationship to the street and said that there is "reasonable concern" that the experience will be changed. Srinivasan replied by noting that the box office will still be on the ground level.

Commissioner John Gustafsson differed from Goldblum, saying that, unlike the theaters on the side streets, loitering outside the theater isn't something to be savored in this case. It is something to be endured. The reconfigured theater will make for an improved experience, he said. He said they have to be willing to take the risk, but if it fails, it will probably be the last time they approve the moving of a landmark.

The commissioners approved the project, subject to peer review.

Community Board 5 and the Times Square Alliance both support the project, as did the New York Landmarks Conservancy's Alex Herrera.

Christabel Gough of the Society for the Architecture of

the City asked, "Must we really change this?" She said she felt access issues were still unresolved.

The Historic District Council's Kelly Carroll quoted **the theater interior's designation report**, which says, "If one theater in New York's Broadway theater district were to be named the most famous, the privilege would fall virtually uncontested to the Palace."

She went on to say "this proposal will divorce this theater from a Seventh Avenue entrance in the heart of the Broadway District, and make attendees enter on a side street. What will the public get in return? Perhaps a Red Lobster with a gift shop."

"Approval of this application will be a clear communication of conscience, and indicative that our culture and art is merely secondary to a Times Square corporate chain store," she added. (You can read her full testimony **here**.)

"Think again," pleaded HDC President Dan Allen.

Tara Kelly of the Municipal Art Society called the designation report "positively exuberant" and asked why this had to happen.

Check out the full presentation slides below.



 

PBDW ARCHITECTS
HIGGINS QUASEBARTH & PARTNERS, LLC

Palace Theater - 47th Street and 7th Avenue
NYC Landmarks Preservation Commission - 11.24.2015

LPC-2



EXISTING PROSCENIUM

PBDW ARCHITECTS
HIGGINS QUASEBARTH & PARTNERS, LLC

Palace Theater - 47th Street and 7th Avenue
NYC Landmarks Preservation Commission - 11.24.2015

LPC-3



EXISTING ORCHESTRA

PBDW ARCHITECTS
HIGGINS QUASEBARTH & PARTNERS, LLC

Palace Theater - 47th Street and 7th Avenue
NYC Landmarks Preservation Commission - 11.24.2015

LPC-4



**PBDW** ARCHITECTS

HIGGINS QUASEBARTH & PARTNERS, LLC

EXISTING CEILING

Palace Theater - 47th Street and 7th Avenue
NYC Landmarks Preservation Commission - 11.24.2015

LPC-5



**PBDW** ARCHITECTS

HIGGINS QUASEBARTH & PARTNERS, LLC

Palace Theater - 47th Street and 7th Avenue
NYC Landmarks Preservation Commission - 11.24.2015

LPC-6



EXISTING SECTION

PROPOSED SECTION

LANDMARK INTERIOR

**PBDW** ARCHITECTS

HIGGINS QUASEBARTH & PARTNERS, LLC

PROPOSED ELEVATION
OF THEATER

Palace Theater - 47th Street and 7th Avenue
NYC Landmarks Preservation Commission - 11.24.2015

LPC-7





1915, Museum of the City of New York

1910's, New York Public Library

**PBDW** ARCHITECTS
Higgins Quasebarth & Partners, LLC

Palace Theater - 47th Street and 7th Avenue
NYC Landmarks Preservation Commission - 11.24.2015

LPC-8



1913, Architecture magazine

**PBDW** ARCHITECTS
Higgins Quasebarth & Partners, LLC

Palace Theater - 47th Street and 7th Avenue
NYC Landmarks Preservation Commission - 11.24.2015

LPC-9





1988

1988

**PBDW** ARCHITECTS
Higgins Quasebarth & Partners, LLC

Palace Theater - 47th Street and 7th Avenue
NYC Landmarks Preservation Commission - 11.24.2015

LPC-10



**1988**

7TH AVENUE

**PBDW** ARCHITECTS
HIGGINS QUASEBARTH & PARTNERS, LLC

Palace Theater - 47th Street and 7th Avenue
NYC Landmarks Preservation Commission - 11.24.2015

LPC-11



View facing east along 47th street



View of Theater Entrance on 7th avenue



Site Plan

**PBDW** ARCHITECTS
HIGGINS QUASEBARTH & PARTNERS, LLC

EXISTING CONTEXT

Palace Theater - 47th Street and 7th Avenue
NYC Landmarks Preservation Commission - 11.24.2015

LPC-12



EXISTING PLAN - ORCHESTRA

**PBDW** ARCHITECTS
HIGGINS QUASEBARTH & PARTNERS, LLC

EXISTING

Palace Theater - 47th Street and 7th Avenue
NYC Landmarks Preservation Commission - 11.24.2015

LPC-13



EXISTING LOBBY



EXISTING MAIN ENTRANCE DOORS

**PBDW** ARCHITECTS     EXISTING ENTRY LOBBIES     Palace Theater - 47th Street and 7th Avenue
HIGGINS QUASEBARTH & PARTNERS, LLC     NYC Landmarks Preservation Commission - 11.24.2015

LPC-14



PROPOSED PLAN - GROUND FLOOR

**PBDW** ARCHITECTS     PROPOSED     Palace Theater - 47th Street and 7th Avenue
HIGGINS QUASEBARTH & PARTNERS, LLC     NYC Landmarks Preservation Commission - 11.24.2015

LPC-15



PROPOSED PLAN - GROUND FLOOR MEZZANINE

**PBDW** ARCHITECTS     PROPOSED     Palace Theater - 47th Street and 7th Avenue
HIGGINS QUASEBARTH & PARTNERS, LLC     NYC Landmarks Preservation Commission - 11.24.2015

LPC-16









EXISTING PLAN - FIRST BALCONY

**PBDW** ARCHITECTS
HIGGINS QUASEBARTH & PARTNERS, LLC

EXISTING

Palace Theater - 47th Street and 7th Avenue
NYC Landmarks Preservation Commission - 11.24.2015

LPC-20



PROPOSED PLAN - FIRST BALCONY

**PBDW** ARCHITECTS
HIGGINS QUASEBARTH & PARTNERS, LLC

PROPOSED

Palace Theater - 47th Street and 7th Avenue
NYC Landmarks Preservation Commission - 11.24.2015

LPC-21



EXISTING PLAN - SECOND BALCONY

**PBDW** ARCHITECTS
HIGGINS QUASEBARTH & PARTNERS, LLC

EXISTING

Palace Theater - 47th Street and 7th Avenue
NYC Landmarks Preservation Commission - 11.24.2015

LPC-22







Hamilton Grange (1802), moved in 1899 to Convent Avenue, and again in 2008 to St. Nicholas Park

Empire Theater (1912), 42nd Street, 1998

















1913, Harry Ransom Center

**PBDW** ARCHITECTS     VIEW FROM ORCHESTRA     Palace Theater - 47th Street and 7th Avenue
Higgins Quasebarth & Partners, LLC      NYC Landmarks Preservation Commission - 11.24.2015

LPC-32



1913, New York Public Library

**PBDW** ARCHITECTS     BALCONY AND BOXES     Palace Theater - 47th Street and 7th Avenue
Higgins Quasebarth & Partners, LLC      NYC Landmarks Preservation Commission - 11.24.2015

LPC-33



ALTERATIONS TO REMAIN
ALTERATIONS WITH PROPOSED WORK

**PBDW** ARCHITECTS     VIEW FROM ORCHESTRA - ALTERATIONS AND     Palace Theater - 47th Street and 7th Avenue
Higgins Quasebarth & Partners, LLC      PROPOSED SCOPE OF WORK     NYC Landmarks Preservation Commission - 11.24.2015

LPC-34



Wall panels covered with felt; Proposal includes replacement with Damask-patterned fabric matching original.

Non-historic wall treatment to be replaced. Proposal includes replacement with Damask-patterned fabric matching original.

Aisle end-rails not original, installed prior to 1951. All rails to be stripped of later finishes, typical.

First balcony fascia plaster removed prior to designation; Replacement of decorative plaster fascia is proposed. Refer to LPC-36.

Vent added prior to 1943.

Existing equipment support penetrations to remain. Abandoned penetrations to be patched, typical.

Chandelier not original, to be removed.

Wall panels covered with felt; Replacement with Damask-patterned fabric matching original is proposed.

Original 3 boxes removed and area below altered in 1965.

Base altered prior to 1942 and again after 1955.

Original plasters removed in 1965. Replacement is proposed. Refer to LPC-36.

New exit path proposed through existing opening. Refer to LPC-43.

Exit doors replaced and pediments altered post-designation (typical throughout); New referential wood paneling is proposed as replacement. Refer to LPC-44.

Original marble walls to be patched and cleaned.

ALTERATIONS TO REMAIN
ALTERATIONS WITH PROPOSED WORK

**PBDW** ARCHITECTS
HIGGINS QUASEBARTH & PARTNERS, LLC

BALCONY AND BOXES - ALTERATIONS AND PROPOSED SCOPE OF WORK

Palace Theater - 47th Street and 7th Avenue
NYC Landmarks Preservation Commission

LPC-35

---



EXISTING



All rails to be stripped of later finishes, typical. Decorative fascia plaster to be replaced.

Less intrusive lighting rail to be installed.

PROPOSED SECTION



PROPOSED



FRONT BALCONY RAIL

**PBDW** ARCHITECTS
HIGGINS QUASEBARTH & PARTNERS, LLC

FIRST BALCONY PLASTER
FASCIA REPLACEMENT

Palace Theater - 47th Street and 7th Avenue
NYC Landmarks Preservation Commission - 11.24.2015

LPC-36

---



**PBDW** ARCHITECTS
HIGGINS QUASEBARTH & PARTNERS, LLC

FINISH AND ORNAMENTAL DAMAGE TO BE RESTORED

Palace Theater - 47th Street and 7th Avenue
NYC Landmarks Preservation Commission - 11.24.2015

LPC-37















**Subscribe** to the YIMBY newsletter for weekly updates on New York's top projects
**Follow** the YIMBYgram for real-time photo updates
**Follow** YIMBY's Twitter for the latest in YIMBYnews

1564 BROADWAY      HIGGINS QUASEBARTH AND PARTNERS

LANDMARKS      MAEFIELD DEVELOPMENT

NEW YORK      PBDW ARCHITECTS      TIMES SQUARE

f SHARE      🐦 TWEET      SHARE      8+ SHARE

‹ **Previous post**

**Next post** ›

RELATED ARTICLES



JUNE 17, 2016

**Tales of the Tenderloin: Theaters, Nightlife, and the World's Longest Painting Once Graced 1205-1227 Broadway, Site of Future Virgin Hotel**



JUNE 17, 2016

**Macklowe's 200 East 59th Street Revealed, in Midtown East**



JUNE 17, 2016

**NYCHA Plans an 18-Story Building at 413 West 18th Street in Chelsea**



JUNE 16, 2016

**Renovation Planned at Tower 45, the 40-Story Office Tower at 120 West 45th Street, Midtown**

3 COMMENTS

ON "PALACE THEATER TO BE LIFTED 29 FEET FOR EXPANDED FACILITIES AND RETAIL"

Rich | November 25, 2015 at 9:41 am | Reply

Fascinating.
But what about the rest of the building? Does this mean the DoubleTree is being replaced?!

Jon | November 26, 2015 at 1:58 am | Reply

Just remarkable. Rich, the DoubleTree hotel is a separate building. The article mentions that there is about a one inch gap between the hotel and the Palace. The lift project shouldn't affect the DoubleTree tower at all.

---

Myles Garcia | December 2, 2015 at 2:12 pm | Reply

When will this happen? How long will the theater be non-operational for the renovation to be completed?

---

## Leave a comment

Your email address will not be published.

Comment

Name *

Email *

Post Comment

© COPYRIGHT 2016 | NEW YORK YIMBY